**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICKY RAPIER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1202-CR-92 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Reuben Hill, Judge
Cause No. 49F18-1009-FD-69313

**September 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Ricky Rapier appeals following his conviction of Battery[1] as a class D felony and raises the following two issues for our review:

1.    Did the trial court abuse its discretion by denying Rapier's request for a continuance?

2.    Did the trial court abuse its discretion by denying Rapier's motion to dismiss based on the State's alleged failure to preserve materially exculpatory evidence?

We affirm.

On September 4, 2010, Rapier was an inmate at the Riverside Correctional Facility work release center in Indianapolis. Correctional officers George Onochie and Marcus Harris were on duty in the facility's control room that afternoon shortly before 3:00 p.m., when an announcement was made that all inmates were to return to their rooms for the afternoon head count. Instead of going to his room as directed, Rapier went into the control room and asked for a pair of gloves and cleaning supplies. Inmates are not allowed in the control room without permission, and Officer Onochie told Rapier to leave the control room and return to his room for the head count. Rapier ignored Officer Onochie's repeated requests to leave the control room and continued to demand gloves and cleaning supplies. After observing that there was not a box of gloves in the control room, Officer Onochie pulled a pair of clean gloves out of his pocket and told Rapier to take them and return to his room for the head count. Rapier refused to take the gloves, claiming that they were dirty and used. As Officer Onochie approached the control room door to close it, Rapier placed his

---

[1] Ind. Code Ann. § 35-42-2-1 (West, Westlaw current with all 2012 legislation).

foot in the door to prevent it from closing. Officer Onochie ordered Rapier to step back several times, but Rapier refused. When Officer Onochie grabbed the door to close it and force Rapier out of the control room, Rapier punched him in the jaw.

As a result of these events, the State charged Rapier with class D felony battery and class A misdemeanor battery. On September 15, 2010, Rapier filed a motion for discovery requesting any video footage of the incident. The trial court granted the motion on September 30, 2010. On May 12, 2011, Rapier filed a motion to dismiss based on the State's alleged discovery violations. Specifically, Rapier argued that the State had not provided the video footage as ordered and had in fact destroyed the video evidence. The State filed a response stating that officials at the correctional facility indicated that there was no video footage of the incident because it occurred in a "blind spot", and that the correctional facility had not provided the State with the video footage of the surrounding area. *Appellant's Appendix* at 42. The trial court denied Rapier's motion to dismiss at a pretrial conference on May 17, 2011.

On May 18, 2011, six days before his scheduled jury trial, Rapier filed a motion for a continuance. In the motion, Rapier's counsel indicated that Rapier had told him about a potential eyewitness, Bryant Carr, on May 13, 2011. The motion indicated that counsel had not been able to reach Carr, but that he had spoken to Carr's mother, who stated that she would "do her best to get a hold of him." *Id.* at 49. The trial court heard argument on the motion to continue on May 24, 2011, the morning of the scheduled jury trial. The motion was denied and the matter proceeded to trial, at the conclusion of which Rapier was found guilty as charged. The trial court entered judgment of conviction only on the class D felony

3

count and sentenced Rapier to 730 days in the Department of Correction. Rapier subsequently filed a petition for permission to file a belated notice of appeal, which the trial court granted. This appeal ensued.

1.

Rapier first challenges the trial court's denial of his motion for a continuance so he could continue to attempt to locate Carr and secure his testimony. Rulings on non-statutory motions for continuance, such as Rapier's, are committed to the sound discretion of the trial court and will be reversed only for an abuse of that discretion and resultant prejudice.[2] *Schmid v. State*, 804 N.E.2d 174 (Ind. Ct. App. 2004), *trans. denied*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Barber v. State*, 911 N.E.2d 641 (Ind. Ct. App. 2009).

> Every defendant has the fundamental right to present witnesses in his or her own defense. This right is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecutor's to the jury so it may decide where the truth lies. At the same time, while the right to present witnesses is of the utmost importance, it is not absolute. In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.

*Tolliver v. State*, 922 N.E.2d 1272, 1282 (Ind. Ct. App. 2010) (citations and quotations omitted), *trans. denied*.

Six days before his jury trial was scheduled to commence, Rapier filed a motion for a continuance seeking additional time to locate Carr, who he claims witnessed the incident, and to secure his testimony for trial. The trial court denied Rapier's motion to continue because

4

defense counsel had been unsuccessful in contacting Carr despite making diligent efforts to do so, and because Rapier had not disclosed the existence of the witness until ten days before the scheduled trial date, even though the case against him had been pending for more than eight months. In support of his contention that the trial court abused its discretion in denying his motion for a continuance to allow him to make additional efforts to secure Carr as a witness, Rapier directs our attention to *Barber v. State*, 911 N.E.2d 641.

In *Barber v. State*, the defendant was charged with operating a vehicle while intoxicated and intended to present a defense of involuntary intoxication based upon her alleged belief that someone had slipped something into her drink. Prior to trial, the defendant was granted two continuances, one of which was requested for the express purpose of locating additional defense witnesses. Trial was ultimately rescheduled for a mere two months after the defendant's arrest. *Id.* The defendant filed a motion for a third continuance on the day of trial, along with an updated witness list naming two additional witnesses. Defense counsel indicated that after an extensive investigation, these witnesses had been located two days prior to trial, and one of them believed that she had been similarly drugged at the same location on the evening in question. The defendant requested additional time in order to secure the testimony of these witnesses. The trial court denied the motion because the request fell well past the court's deadline for the witness list. *Id.*

This court held that the trial court's denial of the motion was an abuse of discretion. *Id.* In reaching its conclusion, this court emphasized the strong presumption in favor of

---

[2] Rapier does not argue that he was entitled to a continuance as of right under Ind. Code Ann. § 35-36-7-1 (West, Westlaw current with all 2012 legislation).

allowing testimony of even late-disclosed witnesses, the lack of bad faith on the defendant's part, the relatively minimal prejudice to the State, and the clear prejudice to the defendant resulting from her inability to bolster her involuntary intoxication defense. *Id.*

This case is readily distinguishable from *Barber v. State*. Here, despite Rapier's claims that Carr was an eyewitness to the incident and would support his claim of self-defense, Rapier did not mention Carr to his defense counsel until ten days prior to his trial, which had been pending for over eight months by that time. It is easy to infer a bad-faith, dilatory motive from Rapier's delay in disclosing Carr's existence, and the trial court indicated that this delay was a factor in its decision to deny the motion. Moreover, despite defense counsel's best efforts, Carr had not been located at the time of the motion for a continuance. Rapier's defense counsel had been in contact with Carr's mother and had attempted to subpoena Carr at her address, but on the morning of trial, she told defense counsel that she had not heard from Carr in two weeks. Rapier did not describe what additional efforts could be taken to locate Carr and made no showing that such efforts would be successful. *See Ross v. State*, 844 N.E.2d 537 (Ind. Ct. App. 2006) (affirming the denial of a motion to continue for absent witness, in part because there was no showing that the witness could be procured within a reasonable time). Under these facts and circumstances, we cannot conclude that the trial court's denial of Rapier's motion for a continuance was an abuse of discretion.

Rapier also argues that the trial court's denial of his request for a continuance violated his constitutional right to compulsory process for obtaining witnesses. Because Rapier did not present this argument to the trial court, it is waived. *See Flowers v. State*, 738 N.E.2d

6

1051 (Ind. 2000) (noting that a party may not present an issue on appeal that was not raised before the trial court). Waiver notwithstanding, Rapier's claim fails. When a criminal defendant alleges his right to compulsory process has been unconstitutionally limited, the appellate court engages in a two-step analysis. *Klagiss v. State*, 585 N.E.2d 674 (Ind. Ct. App. 1992), *trans. denied.* First, we must determine whether the trial court arbitrarily denied the Sixth Amendment rights of the person calling the witness, and second, whether the witness was competent to testify and his testimony would have been relevant and material to the defense. *Id.* Here, the trial court's actions were far from arbitrary. For the same reasons we conclude that the trial court's denial of Rapier's motion for a continuance was not an abuse of discretion, we also conclude that the denial did not violate Rapier's constitutional right to compulsory process.

## 2.

Next, Rapier argues that the trial court abused its discretion by denying his motion to dismiss based on the State's alleged failure to preserve materially exculpatory evidence. As an initial matter, we note that although the chronological case summary indicates that Rapier's motion to dismiss was denied at a pretrial conference on May 17, 2011, Rapier has not provided us with a transcript of that hearing. Although Rapier's written motion to dismiss and the State's response have been included in the record, we have no way of knowing what evidence was presented or what arguments and/or concessions were made at the hearing, and we are unable to discern the basis for the trial court's ruling. Accordingly, our ability to provide meaningful appellate review is significantly hampered. It is the appellant's duty to present this court with an adequate record clearly showing the alleged

7

error, and if he fails to do so, the issue is deemed waived. *Lightcap v. State*, 863 N.E.2d 907 (Ind. Ct. App. 2007). Because the transcript of the hearing is of critical importance to our review of this issue, its absence from the record leads us to conclude that Rapier has waived appellate review of this issue.

Waiver notwithstanding, we find no error in the trial court's denial of Rapier's motion to dismiss based on the limited record with which we are presented. A trial court's ruling on a motion to dismiss is reviewed for an abuse of discretion. *State v. Durrett*, 923 N.E.2d 449 (Ind. Ct. App. 2010). Rapier argues that the trial court's denial of his motion to dismiss was an abuse of discretion because the State's failure to preserve video evidence of the incident violated his due process rights. To determine whether the State's failure to preserve evidence has violated a defendant's due process rights, we must first determine whether the evidence is materially exculpatory or merely potentially useful. *Id.*

Evidence is materially exculpatory if its exculpatory value was apparent before it was destroyed and the defendant is unable to obtain comparable evidence by other reasonable means. *Id.* Exculpatory evidence is that which tends to establish a criminal defendant's innocence. *Id.* "A prosecutor's duty to preserve exculpatory evidence is limited to evidence that might be expected to play a significant role in the defendant's defense." *Id.* at 453. The State's failure to preserve materially exculpatory evidence violates due process regardless of whether the State acted in good or bad faith. *Id.* If, however, the evidence is merely potentially useful, the State's failure to preserve it does not constitute a denial of due process unless the defendant can show bad faith on the part of the police. *Land v. State*, 802 N.E.2d 45 (Ind. Ct. App. 2004), *trans. denied*.

8

Rapier argues that the State failed to preserve a video of the altercation between Rapier and Officer Onochie. But the record in this case indicates that no such evidence existed. In his motion to dismiss, Rapier claimed that the State initially told defense counsel that "there was a video", but subsequently informed him that "the tape no longer existed or had been destroyed." *Appellant's Appendix* at 37. In its response to Rapier's motion to dismiss, the State indicated that it had requested copies of any video of the incident from the correctional facility, and was informed that the incident had not been caught on camera because it occurred in a "blind spot". *Id.* at 42. Nevertheless, the State requested a copy of whatever video was available and was informed that a copy would be mailed. The State did not receive the video, and thereafter made multiple attempts to contact personnel at the correctional facility, but received no response. The State later learned that it had not received any response because the facility was going out of business. The State asserted that "[a]t no time was there a video of the incident, and at no time was a video of the control room in the custody of the State." *Id.* at 43.

Nevertheless, on appeal, Rapier argues that the evidence presented at trial contradicts the State's assertion that there was no video of the incident, and that the absence of the video is attributable to the State because the work release center is an agent of the State. Even if we accept the dubious assertion that a work release center is an agent of the State for the purpose of collecting and preserving evidence of crimes, Rapier is not entitled to relief. The only evidence Rapier cites to support his contention that the incident was caught on camera is testimony from his trial. Specifically, Rapier directs our attention to Officer Onochie's testimony that there is a camera outside the control room that "could get the front part of the

9

control room". *Transcript* at 38. Rapier also directs our attention to portions of Officer Onochie's and Officer Harris's testimony suggesting that Rapier was not completely inside the control room when the incident occurred, as well as Rapier's own testimony that he was at the entrance of the control room at the time of the incident.

This evidence was not presented until well after the trial court denied Rapier's motion to dismiss. There is no indication that Rapier presented similar evidence at the time the trial court considered his motion to dismiss, and Rapier did not renew his motion to dismiss in light of the officers' testimonies. Moreover, these statements do not necessarily establish that the incident was caught on video and, in light of our deferential standard of review, we will not reweigh allegedly conflicting evidence concerning the existence of the video. Because Rapier failed to establish that a video of the altercation ever existed, his due process claim based on the State's purported failure to preserve this evidence necessarily fails.

To the extent Rapier argues that the State violated his due process rights by failing to preserve the video that did exist but was never provided by the correctional facility, i.e., the video of the outside of the control room that did not depict the altercation, we note that such evidence would not be materially exculpatory and would be, at most, potentially helpful. Rapier would therefore be required to establish bad faith in order to support his due process claim. Bad faith is not simply bad judgment or negligence; rather, it "'implies the conscious doing of wrong because of dishonest purpose or moral obliquity.'" *Land v. State*, 802 N.E.2d at 49 (quoting *Wade v. State*, 718 N.E.2d 1162, 1166 (Ind. Ct. App. 1999), *trans. denied*). Because Rapier does not claim that the State acted in bad faith, any due process claim premised on the purported failure to preserve potentially useful evidence likewise fails.

10

Accordingly, we cannot conclude that the trial court abused its discretion in denying Rapier's motion to dismiss.

Judgment affirmed.

BROWN, J., and PYLE, J., concur.